UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOKYO UNIVERSITY OF SOCIAL WELFARE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TWITTER, INC.,<br><br>Defendant. | Case No. 21-mc-80102-DMR<br><br>**ORDER ON MOTION TO QUASH**<br>Re: Dkt. No. 8 |

Petitioner Tokyo University of Social Welfare ("TUSW") filed an ex parte application pursuant to 28 U.S.C. § 1782 to obtain discovery from Respondent Twitter, Inc. ("Twitter") for use in foreign proceedings. On June 28, 2021, the court granted TUSW's application by authorizing issuance of a subpoena to Twitter as well as giving Twitter and the interested Twitter account user the opportunity to contest it. [Docket No. 7.] Twitter now moves to quash the subpoena. This matter is suitable for resolution without oral argument. Civ. L.R. 7-1(b). For the following reasons, the motion is granted.

I.  **BACKGROUND**

TUSW provides undergraduate and graduate programs in "international social work and contribution" in Japan. [Docket No. 2 (Shimizu Decl. Apr. 27, 2021) ¶ 4.] On December 15, 2020, Twitter user @yesmanyurusanai posted a tweet about TUSW claiming that its "Hensachi," which is a measurement of academic performance and difficulty in passing entrance exams for universities, "has deteriorated" and that TUSW "has failed to function as an educational place." [Docket No. 3 (Reynolds Decl. Apr. 27, 2021) ¶¶ 2, 3, Ex. C (translation of tweet).] The full text of the translated tweet says:

> Deterioration in deviation value ("Hensachi") is a [sic] proof that

> Tokyo University of Social Welfare has failed to function as an educational place.
>
> The deviation value at the time is not necessarily important, but if it has deteriorated, it it [sic] a proof that the school has just admitted any students withtout [sic] maitaining [sic] the quality.
>
> You don't have to jump on to this school for it's the [sic] good employment rate. You can also obtain qualifications from other universities.

Reynolds Decl. Ex. C.

TUSW contends that the claims in the tweet are false. Yohei Shimizu, an attorney for TUSW, states that the tweet "was posted for harassment purposes and constitutes defamation under Japanese law." Shimizu Decl. ¶¶ 4, 5. TUSW sought leave under section 1782 to issue a subpoena to Twitter, which is headquartered in this district, for documents that identify the user of the @yesmanyurusanai account for an anticipated lawsuit against the individual who posted the tweet in Japan. *Id*. at ¶¶ 6, 7. The subpoena requests all documents identifying the user(s) of the account, the names and addresses of credit card holders registered on the account, and access logs for the account. [Docket No. 5-1 (Proposed Subpoena).]

The court granted TUSW's section 1782 application on June 28, 2021. *Tokyo Univ. of Soc. Welfare v. Twitter, Inc.*, No. 21-MC-80102-DMR, 2021 WL 2651304 (N.D. Cal. June 28, 2021). The order directed Twitter to serve a copy of the subpoena and the order on the user(s) of the @yesmanyurusanai account within 30 days of the date of service of the subpoena on Twitter and permitted Twitter and the user(s) to contest the subpoena by filing a motion to quash within 30 calendar days from the date of service.[1] *Id*. at *3.

TUSW served the subpoena on Twitter on July 1, 2021. [Docket No. 11-2 (Schwartz Decl., Jul. 30, 2021) ¶ 2, Ex. A.] Twitter gave notice to the owner of the @yesmanyurusanai account on July 16, 2021. *Id*. at ¶ 3. It also served objections to the subpoena on the same date. *Id*. at ¶ 4, Ex. B. Twitter now moves to quash the subpoena pursuant to section 1782 and Rule 45.

---

[1] Federal Rule of Civil Procedure 45 governs discovery of nonparties by subpoena. It provides that "on timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv).

2

1  The owner of the account at issue has not appeared in this action or filed a motion challenging the
2  subpoena.

## II.     LEGAL STANDARD

28 U.S.C. § 1782 states as follows:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court . . . . To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a). The purpose of section 1782 is "to provide federal-court assistance in the gathering of evidence for use in a foreign tribunal." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004); *see also Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004) (noting that section 1782 has the "twin aims" of "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts" (citation and quotations omitted)).

A district court is authorized to grant a section 1782 application where (1) the person from whom the discovery is sought resides or is found in the district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a "foreign or international tribunal," and (3) the application is made by the foreign or international tribunal or "any interested person." 28 U.S.C. § 1782(a); *see also Intel*, 542 U.S. at 246-47; *In re Republic of Ecuador*, No. C-10-80255-CRB (EMC), 2010 WL 3702427, *2 (N.D. Cal. Sept. 15, 2010).

"However, simply because a court has the authority under § 1782 to grant an application does not mean that it is required to do so." *In re Republic of Ecuador*, 2010 WL 3702427, at *2 (citing *Intel*, 542 U.S. at 264). The Supreme Court has identified several discretionary factors that a court should take into consideration in ruling on a Section 1782 request: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the

3

foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65.

## III. DISCUSSION

Twitter objects to the subpoena under the fourth *Intel* discretionary factor, which examines whether the request for discovery is "unduly intrusive or burdensome." *See Intel*, 542 U.S. at 264-65; Mot. 6.[2] Noting that TUSW's subpoena seeks information revealing the identity of an anonymous online speaker, Twitter argues that the subpoena should be quashed unless the court finds that TUSW has satisfied the requisite First Amendment safeguards that apply in such circumstances.

### A. Standards Applicable to Discovery Seeking Identification of an Anonymous Speaker

It is well-settled that "an author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment." *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) (quoting *McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 342 (1995)). "As with other forms of expression, the ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without 'fear of economic or official retaliation . . . [or] concern about social ostracism." *In re Anonymous*, 661 F.3d at 1173 (quoting *McIntyre*, 514 U.S. at 341-42). However, the "right to anonymity is not absolute." *Art of Living Found. v. Does 1–10,* No. 10–CV–05022–LHK, 2011 WL 5444622, at *4 (N.D. Cal. Nov. 9, 2011). "Where anonymous speech is alleged to be unlawful, the speakers' right may give way to a plaintiff's need to discover the speaker's identity in order to pursue its claim." *Id*.

---

[2] Twitter does not dispute that TUSW has met section 1782's statutory requirements for obtaining discovery for use in a foreign proceeding. It also does not dispute that TUSW has satisfied the first three *Intel* discretionary factors.

4

Where a section 1782 applicant seeks leave to conduct discovery to identify an anonymous speaker, courts have evaluated the request under the fourth *Intel* factor—whether the request is unduly intrusive or burdensome. *See, e.g., In re PGS Home Co. Ltd.*, No. 19-MC-80139-JCS, 2019 WL 6311407, at *3 (N.D. Cal. Nov. 25, 2019); *In re Yasuda*, No. 19-MC-80156-TSH, 2020 WL 759404, at *5 (N.D. Cal. Feb. 14, 2020). Since discovery under section 1782 is guided by the standards set forth in the Federal Rules of Civil Procedure, courts have applied the good cause standard that governs Rule 26(d) requests for early discovery in determining whether to allow a section 1782 applicant to obtain information to unmask an anonymous speaker. *See, e.g., In re Hoteles City Express*, No. 18-MC-80112-JSC, 2018 WL 3417551, at *3 (N.D. Cal. July 13, 2018) (denying section 1782 request where the applicant provided insufficient information for the court to determine whether it could state a claim for defamation under Mexican law); *In re Ex Parte Application of Frontier Co., Ltd.*, No. 19-mc-80184-LB, 2019 WL 3345348, at *3 (N.D. Cal. Jul. 25, 2019). In applying the Rule 26(d) good cause standard, courts examine four factors:

> [Whether] (1) the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court; (2) the plaintiff has identified all previous steps taken to locate the elusive defendant; (3) the plaintiff's suit against defendant could withstand a motion to dismiss; and (4) the plaintiff has demonstrated that there is a reasonable likelihood of being able to identify the defendant through discovery such that service of process would be possible.

*OpenMind Sols., Inc. v. Does 1-39*, No. C 11-3311 MEJ, 2011 WL 4715200, at *2 (N.D. Cal. Oct. 7, 2011) (citing *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999)).

If an applicant satisfies all four good cause factors, the court must then consider the potential chilling effect on First Amendment rights of ordering disclosure of an anonymous speaker's identity. Courts have adopted "a variety of standards to benchmark whether an anonymous speaker's identity should be revealed." *In re Anonymous Online Speakers*, 661 F.3d at 1175. In choosing the proper standard "by which to balance the rights of anonymous speakers," the Ninth Circuit has suggested that courts focus on "the nature of the speech." *Id.* at 1177. A more rigorous standard may be applicable where the speech at issue is political, religious, or literary, while commercial speech "should be afforded less protection." *See id*. "The specific

5

circumstances surrounding the speech serve to give context to the balancing exercise." *Id.*

In this case, the challenged speech is anonymous criticism of TUSW. This falls into the category of commercial speech. Accordingly, the test articulated in *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 974 (N.D. Cal. 2005) applies here. *See In re PGS*, 2019 WL 6311407, at *6 (applying *Highfields* test in section 1782 application challenging commercial speech); *In re Yasuda*, 2020 WL 759404, at *6 (same).[3] Under the *Highfields* standard, the moving party "must adduce *competent evidence* —and the evidence [the moving party] adduces must address *all* of the inferences of fact that [it] would need to prove in order to prevail under at least one of the causes of action [it] asserts." 385 F. Supp. 2d at 975-76 (emphasis in original) (noting that "[t]he court may not enforce the subpoena if . . . any *essential* fact or finding lacks the requisite evidentiary support."). If the moving party meets its initial burden, the court must then "assess and compare the magnitude of the harms that would be caused to the competing interests by a ruling in favor of" the applicant and the speaker. *Id.* at 976.

**B.     Analysis**

The court finds that TUSW has failed to satisfy two of the four good cause requirements under Rule 26(d).

TUSW has met the first and fourth requirement. With respect the first, TUSW has demonstrated that the user of the @yesmanyurusanai account is a real party subject to suit as it has identified the URL address of the speaker's Twitter account and the specific date of the tweet. *See In re Yasuda* ("*Yasuda I*"), No. 19-MC-80156-TSH, 2019 WL 7020211, at *4 (N.D. Cal. Dec. 20, 2019), *on reconsideration,* No. 19-MC-80156-TSH, 2020 WL 759404 (N.D. Cal. Feb. 14, 2020) (holding that section 1782 applicant had demonstrated that the speaker was a real party who could be sued where he identified the URL address of the anonymous defendant's Twitter account, the IP address, and specific dates of the tweets). It has also satisfied the fourth requirement, which requires TUSW to show that the requested discovery is likely to lead to information that would identify the speaker. Here, the subpoena issued to Twitter seeks identifying information for the

---

[3] Neither party disputes that the *Highfields* test applies here. Mot. 1, 4; Opp'n 9.

6

user of the @yesmanyurusanai account.

TUSW has not satisfied the second requirement because it does not specifically identify the steps it has taken to locate the speaker.

TUSW has also failed to meet the third requirement because it has not demonstrated that its proposed suit against the anonymous speaker could withstand a motion to dismiss. TUSW's attorney, Shimizu, offers an "opinion as a Japanese lawyer that the Subject Tweet was posted for harassment purposes and constitutes defamation under Japanese law." [Docket No. 12-2 (Shimizu Decl., Aug. 13, 2021, "2d Shimizu Decl.") ¶ 5.] This is entirely conclusory. Shimizu does not provide the applicable Japanese legal standard for defamation and does not address whether a claim based on the tweet could withstand a motion to dismiss in Japan. *See Yasuda I*, 2019 WL 7020211, at *4-5 (finding that applicant had failed to show that anonymous speaker had "committed an act that can withstand a motion to dismiss . . . in a civil action in Japan").

Shimizu's opinion that the tweet is defamatory appears to be based on the following facts. According to TUSW, the tweet at issue "falsely claims that the deviation measurement value" known as "Hensachi" in Japanese, which is "used to measure academic performance and difficulty in passing entrance exams for universities," has "[d]eteriorat[ed]" and TUSW "has failed to function as an educational place." *Id*. at ¶ 4. Shimizu states that this is not true because recently published statistics show that "the deviation value for TUSW has actually improved." *Id*. Shimizu goes on to state that the "B Rating" in the statistics refers to the "'B Rating' deviation value, which means that the possibility of applicants with such deviation value being accepted by a school is between 60% and 80%," and that the "B Rating for TUSW has improved over the recent years." *Id*.

Attached to Shimizu's declaration are charts labeled "Entrance Exam Status Overview" dated 2017, 2018, December 2019, and June 2020. Shimizu Decl. Ex. B; *see* Reynolds Decl. ¶ 3, Ex. D (English translations). Assuming without deciding that the "B Rating deviation value" is an appropriate proxy for measuring Hensachi, the charts appear to show that the B Rating for the departments listed—psychology, social welfare, education, and childcare—did in fact improve from December 2019 to June 2020, consistent with Shimizu's declaration. However, they also

1    appear to show that the B Ratings *declined* in the social welfare, education, and childcare

2    departments from 2018 to December 2019.  TUSW does not address this portion of the statistics.

3          In sum, TUSW does not explain how the tweet is defamatory under Japanese law.

4    Moreover, it is not clear that the statements in the tweet are false.  The tweet is vague about the

5    time period to which the allegedly defamatory statements refer, and TUSW's own evidence shows

6    that the deviation measurement value dropped (or "deteriorated," as claimed in the tweet) during a

7    time period in recent history.  Accordingly, the court concludes that TUSW has failed to show that

8    its claims could withstand a motion to dismiss in Japan.  *Compare Yasuda*, 2020 WL 759404, at

9    *6 (on reconsideration, finding applicant had shown their defamation claim can withstand a

10   motion to dismiss where the Tokyo District Court found the tweets in question constitute

11   defamation).

12         In addition, the court finds that TUSW did not satisfy its initial burden under the

13   *Highfields* test.  In evaluating the subpoena under that test, the court must first "go beyond the

14   pleadings to determine if there is an evidentiary basis for concluding that the requested discovery

15   is appropriate."  *In re PGS*, 2019 WL 6311407, at *5 (citing *Highfields*, 385 F. Supp. 2d at 975)

16   ("It is not enough for a plaintiff simply to plead and pray.  Allegation and speculation are

17   insufficient.  The standards that inform Rule 8 and Rule 12(b)(6) offer too little protection to the

18   defendant's competing interests.")).  The court finds that TUSW has not shown a "real evidentiary

19   basis for believing that the [speaker] has engaged in wrongful conduct that has caused real harm to

20   the interests of [TUSW] that the laws [it] has invoked were intended to protect."  *See Highfields*,

21   385 F. Supp. 2d at 975.  As discussed above, TUSW's attorney makes only a general, conclusory

22   statement that the tweet is defamatory without reference to or discussion of Japanese defamation

23   law.  TUSW's own evidence suggests that the statement may be true for a certain time period.

24         TUSW also fails to establish the "real harm" element of the *Highfields* test.  On this point,

25   Hidetake Tanaka, the Director of TUSW's Department of Admissions, states that part of the

26   department's responsibilities "is to collect and analyze questionnaires . . . routinely given to

27   applicants who were accepted to TUSW, but decided not to attend" that school.  [Docket No. 12-3

28   (Tanaka Decl., Aug. 13, 2021) ¶ 3.]  Tanaka states that "often, including the period after" the

United States District Court
Northern District of California

tweet in question was posted, "the deviation measurement value . . . has been chosen as one of the reasons by applicants in the Questionnaires for not choosing TUSW." *Id*. at ¶ 4.  Accordingly, Tanaka opines that "Hensachi has such a profound effect on applicants in deciding which universities to apply for and/or attend to and any false information on Hensachi could and is likely to have negatively affected both TUSW and applicants." *Id*.  TUSW cites Tanaka's declaration as evidence that the tweet "could and has necessarily caused harm to the reputation and business" of TUSW.  Opp'n 9.  This is insufficient; TUSW offers no evidence that the number of students applying for admission to and/or deciding to attend the school has declined at all, much less that it declined *as a result of the tweet*.  Accordingly, TUSW has failed to satisfy its initial burden under *Highfields*.  Its request for identifying information is therefore unduly burdensome under *Intel*.

## IV. CONCLUSION

For the foregoing reasons, Twitter's motion to quash is granted.

**IT IS SO ORDERED.**

Dated: September 9, 2021



Donna M. Ryu
United States Magistrate Judge